Downey, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
Plaintiff contracted with the defendant to transport certain troops of the United States and their authorized impedimenta from Fort Thomas, Ky., to San Francisco, Cal., at rates named. For the troops, payment has been satisfactorily made, and this action has to do only with compensation for the impedimenta.
The plaintiff’s contract price of $1.708 per hundred pounds applied to the corrected weights amounted to $11,850.10, for which it filed its claim and demanded full payment to it as the contracting and initial carrier. The Southern Pacific Co., over whose lines the movement passed from El Paso, Tex., to San Francisco, Cal., filed its separate claim on *28 account of the service rendered by it in the sum of $8,811.26, and demanded payment thereof directly to it. Both claims were transmitted for settlement to the Auditor for the War Department, who allowed the claim of the Southern Pacific Co., in the sum of $8,811.26, disallowed $8,811.26 of the plaintiff’s claim, and allowed the plaintiff $3,038.84. The plaintiff alleges its right to recover the entire unpaid balance of its contract price, and alleging that the Southern Pacific Co. upon that basis of payment would have been entitled to receive for its portion of the service rendered the sum of $4,870.47, concedes credit to the defendant in that sum upon the theory that the defendant having paid that sum to the Southern Pacific Co., it, the plaintiff, is relieved from any obligation with reference thereto, and sues to recover $3,-940.79.
The facts with reference to the transaction are fully set out in the findings, and being somewhat voluminous, will not be restated here, except in so far as may seem to be necessary in the discussion of the question involved.
As between the United States and the Southern Pacific Co. we are not interested in any question as to the right of that company to demand and receive the amount of money paid to it on account of the transportation in question. We are, however, interested in the circumstances attending that payment to the extent that their consideration is necessary in the determination of the question as to whether they were such as justified the charge against the plaintiff company, under the supplemental agreement, of the amount paid to the Southern Pacific Co.
A provision, in the supplemental agreement authorized the defendant to charge against the plaintiff company the excess cost thereof in the event that any delay by reason of any difference or controversy between that company and any connecting carrier, required the United States to make other arrangements than that provided for in plaintiff’s contract to secure the prompt movement of the shipment. Since it is plainly apparent from the facts as found that there was in fact no delay in this movement either at El Paso or elsewhere, and that it arrived at its destination well within the required time, the question resolves itself into an inquiry as *29 to whether or not the circumstances of the case demanded any action on the part of the United States involving additional cost to obviate an otherwise imminent delay. The whole question, in one view of the case, might well be determined by the simple fact that the plaintiff company contracted to move this impedimenta to San Francisco within a given time, that it accepted it into its custody for that purpose and issued its through bill of lading, that the shipment was delivered at San Francisco by connecting carrier within the time required, and that upon such delivery the plaintiff’s through bill of lading was accomplished. But there are other facts in connection with the case, the effect of which should receive some consideration.
It appears from the findings that after the plaintiff company had made its first bid on this movement, using as a basis therefor the rate quoted to it by an officer of the Southern Pacific Co., which bid with all others was rejected; that the Southern Pacific Co., complaining at the same time that the plaintiff company had bid unnecessarily low, notified it that it would not participate in the movement at the bid rate, and later withdrew its first-quoted rate, notifying the plaintiff company that it would not participate therein and that it would refuse to haul the movement on any lower basis than their agreed proportion of standard tariff rates, and served various notices to like effect at different times upon officers of the Quartermaster Corps. And it is apparent also that notice of refusal to participate in the rate quoted was given by the Southern Pacific Co. to the plaintiff company before the execution of the contract entered into by the latter company for the movement in question. But so far as these notices are concerned, they seem to have been of no effect except to prompt the officers of the Quartermaster Corps to make such provisions as might be necessary to obviate any delay should it occur. Notwithstanding the notices, the plaintiff company entered into its contract, and, so far as the United States is concerned, it does not appear that the notices resulted in any contract or understanding otherwise as between the United States and the Southern Pacific Co., or in any promise on the part of the United States that any higher rate would be paid to that company for the *30 movement west of El Paso. Instructions were given, it is true, tbat transportation requests and another bill of lading should be available in the hands of the proper officer accompanying the movement for use at El Paso in case of necessity, but it is equally true that the instructions issued preclude the idea that the Southern Pacific Co. was to be informed of any such precautionary procedure on the part of the United States.
It clearly appears from the findings that when the impedimenta train reached El Paso it was expeditiously handled in transfer, necessary repairs made as quickly as possible, and without any objection whatever on the part of anyone was immediately moved out over the lines of the Southern Pacific. It left El Paso about 16 hours before the arrival of the first troop train, upon which the commanding officer and the regimental quartermaster were traveling. When it resumed its journey from El Paso to its destination it was unquestionably being transported upon the plaintiff’s through bill of lading, since no other bill of lading was at that time in existence, and it is quite reasonable to assume, if in fact it is an assumption at all, that the Southern Pacific Co. was fully informed of the plaintiff’s contract for the through haul and of the issuance of its proper bill of lading therefor.
It is quite peculiarly to be observed that when the troop train reached El Paso, although demand is shown to have been made by the representative of the Southern Pacific Co. for new transportation, which, it is stated, was delivered, and the train moved out promptly, no demand is shown to have been made with reference to any separate bill of lading for the impedimenta over the Southern Pacific lines. The demand shown to have been made for transportation must, putting the usual interpretation upon that word, be construed to refer to Government transportation requests for the officers and men being moved. “ Transportation,” as ordinarily used, does not mean a bill of lading.
From the findings it is apparent that there is difficulty in determining just what occurred at El Paso with reference to a bill of lading. It appears that a bill of lading, presumably the bill of lading prepared in advance at Chicago, *31 was delivered with the transportation requests to the agent oí the Southern Pacific. Why it should have been delivered without demand, under the circumstances, does not to our satisfaction appear. It is true that there is in the record a statement made five years subsequent to the transaction by the then regimental quartermaster in a letter to the Assistant Attorney General, in the record by stipulation, to the effect that he accepted a new bill of lading at El Paso on telegraphic instructions from “ superior authority ” received by him on or immediately preceding his arrival at El Paso, but (1) this telegram is not in the record. It is reasonable to assume that under such circumstances he would have preserved the telegram for his own protection, especially in view of the explicit instructions given him as to his procedure, and if he did not preserve it there is recourse to the files of the office from which it emanated, and almost constant consideration of matters involving reports from the departments familiarizes us with the practice of preserving office copies of all instructions sent out. (2) That the telegram contained such instructions is in conflict with other statements in the record, and (3) no reason is shown for the abrogation of or departure from the instructions set out in Finding IV. We have therefore declined to find the fact in reference to this telegram as stated. If anything had transpired subsequent to the issuance of the instructions referred to which necessitated a change of policy to obviate delay and resulted in peremptory instructions to the regimental quartermaster to accept a new bill of lading at El Paso, it was the duty of the defendant to present the facts to the court, and if it suffers by reason of its failure the fault is its own. It is difficult, however, to conceive a reason for such peremptory instructions to avoid delaying a train, which, allowing ample time for the transmission of the telegram, must have been well on its way west of El Paso before the telegram was. sent.
The bill of lading upon which the Southern Pacific Co. predicated its claim for the payment made to it for the movement from El Paso to San Francisco is in the record, and, as indicated in the findings, has peculiar features. The channel through which it traveled until it was finally found
*32 in the hands of the quartermaster at San Francisco does not appear. If it came into life at El Paso and was there and at the time that the troop train was there, signed by the representative of the Southern Pacific Co., it was then a bill of lading issued for' freight already many miles on its travels toward its destination under ánother bill of lading. The whole procedure with reference to it is such as to furnish some room at least for question as to the good faith of its issuance and acceptance. With that, however, we are not necessarily concerned.
At San Francisco plaintiff’s through bill of lading and the Southern Pacific Co.’s bill of lading from El Paso were both accomplished, as shown in the findings, and certain indorsement was put on each bill of lading referring to the other, but these indorsements were placed thereon some time after the bills were both accomplished, and it seems to us can have no bearing on the question involved.
The Government’s relations primarily were with the plaintiff, and upon receipt of the shipment at San Francisco it accomplished the plaintiff’s bill of lading. This, it would seem, accompanied by performance by the plaintiff of its contract within the required time, entitles the plaintiff to payment of its contract price for the service rendered unless something had intervened which brought the transaction within the provisions of the supplemental agreement, and entitled the United States to deduct some necessarily incurred expense therefrom. We think the facts found show quite clearly not only that there was no delay at El Paso but that there was no such threatened delay as justified the United States in incurring any additional expense in avoidance thereof, and whether or not by its procedure in the matter it obligated itself to make a separate payment at an increased rate to the Southern Pacific Co. for the service performed by it, a question we do not decide, it seems quite clear that it did not incur such additional cost under any such circumstances as entitled it to make a charge thereof against the plaintiff.
, We conclude that the plaintiff is entitled to recover the sum of $3,940.79, and a judgment is awarded accordingly.
Hat, Judge, BarNev, Judge, Booth, Judge, and Campbell, Chief Justice, concur.